# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| INTAKE DIRECT LLC | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No.: 4:21-cv-191 |
| | ) | |
| ANTHONY JOHNSON | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

**COMPLAINT FOR DAMAGES AND FOR PRELIMINARY AND PERMANENT INJUNCTIONS AND OTHER RELIEF**

COMES NOW Intake Direct, LLC, Plaintiff herein, and files this Complaint for damages and for preliminary and permanent injunctions and other relief against Defendant Anthony Johnson, showing the Court as follows:

## I. PARTIES, JURISDICTION and VENUE

1. Plaintiff is a Georgia limited liability company formed and existing under the laws of the State of Georgia with its principal office located at 317 Eisenhower Drive, Savannah, Chatham County, Georgia and submits to the jurisdiction of this Court. Plaintiff's members are Damon Barr, a resident of the state of Virginia, Cason Carter, a resident of the state of Georgia, and Daniel Eichholz, a resident of the state of Texas.

2. Defendant Anthony Johnson is a citizen and resident of the state of Arkansas. Defendant may be served with process by personal service.

3. The amount in controversy in this action exceeds $75,000.00, and there is complete diversity of citizenship between the Plaintiff and Defendant. This Court, therefore, has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332.

1

4. This Court has personal jurisdiction over Defendant Johnson because he has established systematic and continuous activity within the Southern District of Georgia directly or through one or more agents, including physical presence, telephonic communication, and electronic communication, such that the exercise of personal jurisdiction over Defendant Johnson would not be unfair.

5. This Court has personal jurisdiction over Defendant Johnson because he has committed one or more tortious acts or omissions in the Southern District of Georgia which have proximately caused harm to Intake Direct in the Southern District of Georgia.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

7. Jurisdiction and venue are proper in this Court.

## II. GENERAL ALLEGATIONS

8. Plaintiff is an entity that provides intake answering services. It was originally organized as Performance Intake Professionals LLC on November 26, 2018. Its organizers included Defendant Anthony Johnson, Cason Carter, Damon Barr, and Daniel Eichholz. (Exhibit 1, Declaration of Cason Carter, ¶3).

9. On April 17, 2019, Plaintiff's name was changed from Performance Intake Professionals LLC to Intake Direct LLC. (Id., ¶4).

10. In early 2019, Defendant Anthony Johnson made a $200,000 lump sum payment to Intake Direct which payment was initially classified as a capital contribution. (Id., ¶5)

11. On or about May 31, 2019, a document titled "Operating Agreement of Intake Direct LLC" was signed by Daniel Eichholz, Cason Carter, and Defendant Anthony Johnson as initial members and managers of Intake Direct and by Damon Barr as an

initial member (hereafter the "Superseded Operating Agreement"). Under the Superseded Operating Agreement, Defendant Johnson is listed as having a 23% membership interest, Mr. Carter is listed as having a 36% membership interest, Mr. Eichholz is listed as having a 36% membership interest, and Mr. Barr is listed as having a 5% membership interest. Mr. Eichholz is identified as Intake Direct's tax matters partner in the Superseded Operating Agreement. (Id., ¶¶6-7).

12. Mr. Johnson purchased the domain intakedirect.com at an expense of approximately $1.00 to $4.00 per month. (Id., ¶8).

13. Thereafter, Plaintiff purchased a G Suite plan (now known as Google Workspace), which provides collaboration tools for Plaintiff including email, calendar, document storage, etc. (Id., ¶8). Plaintiff continues to pay the cost of its G Suite (n/k/a Google Workspace) at a current cost of approximately $900.00 per month. Plaintiff linked the domain intakedirect.com to serve as the email domain for its employee email addresses (e.g., user@intakedirect.com). (Id. ¶¶9-10).

14. In 2019 Plaintiff began providing intake services for Defendant Johnson's law firm. (Id., ¶12).

15. Shortly after executing the Superseded Operating Agreement, Defendant Johnson agreed that he did not want to be a member or manager of Intake Direct. (Id., ¶12).

16. Accordingly, the lump sum $200,000 payment made by Mr. Johnson was converted to a loan to Intake Direct. The terms of the loan were memorialized in a promissory note dated January 4, 2019 and signed by Mr. Johnson in 2020, under which Plaintiff would owe $250,000 ($50,000 of which was agreed upon interest) on March 17, 2020, with additional 2% interest accruing beginning April 1, 2020. (Id., ¶12).

3

17. As a result of the conversion and reclassification of Mr. Johnson's initial payment to a loan, on or about April 23, 2020, Mr. Eichholz, Mr. Carter, and Mr. Barr executed a document titled "Operating Agreement of Intake Direct LLC" with an effective date of May 31, 2019 (hereafter the "Operative Operating Agreement").  Under the Operative Operating Agreement, Mr. Barr has a 30% membership interest, Mr. Carter has a 35% membership interest, and Mr. Eichholz has a 35% membership interest in Plaintiff. (Id. at ¶12). Mr. Eichholz is identified as Plaintiff's tax matters partner in the Operative Operating Agreement. (Id., ¶¶14-15).

18. In order to be a functional business, Plaintiff needed a location from which to operate its call center.  Plaintiff entered into a lease of commercial office space for this purpose in 2019.  Plaintiff continues to conduct its business from that location.  Defendant Johnson played no role in negotiating the lease, nor in making payments on the lease.  The managers identified in the Operative Operating Agreement negotiated and entered into the lease, and caused Plaintiff to make payments pursuant to the lease. (Id., ¶¶16-17).

19. Plaintiff furnished the office space that it leased.  Defendant Johnson played no role in selecting the furniture for Plaintiff's office space, nor in making payments for the furniture.  The managers identified in the Operative Operating Agreement selected the furniture and caused Plaintiff to pay for the furniture. (Id., ¶18).

20. Plaintiff requires computers, hardware, software, and telephone equipment to operate.  Defendant Johnson played no role in acquiring the computers, hardware, software and telephone equipment for Plaintiff. The managers identified in the Operative Operating Agreement caused Plaintiff to acquire and pay for the computers, hardware, software, and telephone equipment Plaintiff needed. (Id., ¶19).

21. Likewise, the managers identified in the Operative Operating Agreement prepared new hire training packets, and developed protocols, scripts and procedures for Intake Direct's employees to follow.  Mr. Johnson played no role in the development of new hire training packets, nor in the development of protocols, scripts, and procedures. (Id.).

22. In 2020, Plaintiff issued Schedule K-1's (Form 1065) to its members for the 2019 tax year.  Like the Operative Operating Agreement, the K-1's list Mr. Barr as having a 30% membership interest, Mr. Carter as having a 35% membership interest, and Mr. Eichholz having a 35% membership interest in Plaintiff.  (Id., ¶20).  Statement 6 of the Form 1065 (other current liabilities) reflects a $200,000 note payable to "Johnson Firm", which is Defendant Johnson's law firm. (Id., ¶13).

23. No income of Intake Direct was ever allocated to Defendant Johnson on Intake Direct's tax returns, and Defendant Johnson never paid any income taxes on any income of Intake Direct. (Id., ¶22).

24. Despite now claiming to be a member of Plaintiff, and despite his knowledge that Plaintiff was a going concern that generated income in part by providing services to Defendant Johnson's law firm, for which Defendant Johnson paid, Defendant Johnson never inquired about receiving a K-1 from Plaintiff. (Id.).

25. Despite now claiming to be a member of Plaintiff, and despite his knowledge that Plaintiff is a going concern that generated income, Defendant Johnson never claimed to be entitled to distributions from Plaintiff, and never received any distributions from Intake Direct. (Id., ¶23).

26. By 2020, Plaintiff was financially able to repay Defendant Johnson's loan, and it did so by issuing payment to him in the amount of $250,000.  Defendant Johnson

5

negotiated that payment. Plaintiff acknowledged and memorialized the transaction by issuing to Defendant Johnson a form 1099-INT for the 2020 tax year, reflecting payment to Defendant Johnson of $50,000 in interest income. (Id., ¶24).

27. As a result of the efforts of its current managers, Plaintiff has experienced significant growth since its organization. Plaintiff currently has approximately 79 employees. (Id., ¶25).

28. Plaintiff relies upon its website (intakedirect.com) for numerous purposes including generation of business and a location for potential clients as well as potential clients of clients to confirm it is a legitimate business. (Id., ¶26).

29. Plaintiff's employees rely upon email to communicate with one another and to communicate with clients and potential clients and with existing and potential clients of clients. (Id., ¶27).

30. On June 5, 2021, Defendant Johnson sent an email to Mr. Carter and Mr. Barr alleging that he is a member of Plaintiff. Mr. Barr and Mr. Carter deny that Defendant Johnson is a member of Plaintiff. (Id., ¶28-29).

31. On June 23, 2021, Defendant Johnson and Daniel Eichholz had a process server serve upon Mr. Carter a document titled "Notice of Special Meeting of the Managers and Members of Intake Direct, LLC." This notice purported to schedule that meeting to occur on Friday June 25, 2021 at 3 p.m. CST. (Id., ¶30).

32. On June 24, 2021, counsel for Plaintiff sent a letter to Defendant Johnson through his counsel confirming that Defendant Johnson is not a member or manager of Plaintiff and thus lacks the authority to call a meeting of Plaintiff's members or managers. (Id., ¶31).

33. On the early afternoon of June 26, 2021, Mr. Barr and Mr. Carter were informed by Plaintiff's technology team that Plaintiff's website and email functionality had been severed.  Upon further investigation, it was determined that since Defendant Johnson purchased the domain intakedirect.com, he was able to and did sever the intakedirect.com domain, resulting in the loss of Plaintiff's website and loss of functionality of Plaintiff's email domain.  As a result, Plaintiff lost its online presence, and its employees lost the ability to send emails to or receive emails from potential and existing clients, potential and existing clients of clients, and co-workers, using the intakedirect.com email domain. (Id., ¶32-34).

34. Intake Direct employees can, and often times do, serve as a point of contact and go-between for callers and Intake Direct's clients.  Without the ability to send and receive emails, Intake Direct employees lost the ability to facilitate and further foster the relationship between clients and callers.  (Id., ¶35).

35. On June 29, 2021, Defendant Johnson restored the intakedirect.com domain, resulting in the restoration and functionality of Plaintiff's website and email domain. (Id., ¶36).

36. On June 29, 2021 and contemporaneous with the restoration of the intakedirect.com domain, Defendant Johnson sent an email to the managers of Intake Direct which states in relevant part: "I [Defendant Johnson] wanted to make note here and again note that failure to communicate and/or give me access back will.[sic] likely cause future issues . . . ."  Based on the quoted language, Plaintiff can only conclude that Defendant Johnson is willing to sever the intakedirect.com domain in the future. (Id., ¶37).

37. Intake Direct has been harmed by the lack of functionality of its website and email domain, including but not limited to the inability to adequately conduct its business or communicate with current and/or prospective clients and existing and prospective clients of clients, which caused Plaintiff to suffer financial losses in the form of the inability to adequately operate the business, the loss of emails sent to Plaintiff's employees while the domain was severed, loss of goodwill, and the loss of clients and potential clients.  Moreover, Plaintiff suffered financial losses in purchasing an alternate domain and having its employees and agents expend countless man-hours setting up such alternate domain so that Intake Direct could resume its business (although under a domain name not familiar to the public). (Id., ¶¶38-39).

38. Intake Direct intends to return to the domain name commonly recognized by the public (i.e., intakedirect.com) and will experience irreparable, incalculable harm including loss of goodwill and damage to reputation if Defendant Johnson is not enjoined from severing the domain again in the future. (Id., ¶40).

## COUNT I

## Preliminary and Permanent Injunctions

39. Intake Direct re-alleges and incorporates by reference all allegations contained in paragraphs 1 through 38 as if fully alleged herein.

40. This is an action pursuant to Fed. R. Civ. P. 65 for the issuance of preliminary and permanent injunctions to enjoin Defendant Johnson from severing, turning off, terminating or otherwise interfering with Intake Direct's website and email domain pending adjudication of the claims made herein.

41. Defendant Johnson's severance of the intakedirect.com domain resulted in the loss of the Intake Direct website and the loss of functionality of Intake Direct's email

domain, which in turn resulted in Intake Direct no longer having any online presence, and in the inability of Intake Direct's employees to send or receive any emails within the company or with clients or prospective or existing clients of clients.  In addition, all emails sent to an Intake Direct employee between the date the domain was severed until the date it was restored, upon information and belief, have been lost and cannot be retrieved.

42. Based on Defendant Johnson's email to the managers of Intake Direct quoted in ¶36, above, and the fact that Defendant Johnson retains the ability to sever the domain, and in the absence an injunction, Defendant Johnson is likely to, and in fact has threatened to, take similar action in the future which will cause irreparable, incalculable harm including loss of goodwill and damage to Intake Direct's reputation.

43. Intake Direct has no adequate remedy at law if the Court does not grant injunctive relief prohibiting Defendant Johnson from severing Intake Direct's website and email domain in the future.

44. Intake Direct's damages are actual and imminent, and irreparable harm will result unless preliminary and permanent injunctions are issued prohibiting Defendant Johnson from severing Intake Direct's website and email domain.

45. Intake Direct requests that Defendant Johnson be prohibited from severing Intake Direct's website and email domain until there is a full and complete adjudication of Intake Direct's claims as made herein.

## COUNT II

### Tortious Interference with Business Relations

46. Intake Direct re-alleges and incorporates by reference all allegations contained in paragraphs 1 through 45 as if fully alleged herein.

47. Defendant Johnson acted improperly and without privilege by severing the intakedirect.com domain.

48. Defendant Johnson severed the intakedirect.com domain with malice and with the intent to injure Intake Direct.

49. Upon information and belief, Defendant Johnson's actions have caused or could cause Intake Direct's current clients to end their relationship with Intake Direct, cause existing and potential clients of Intake Direct's clients to terminate or not establish relationships with Intake Direct's clients, and have caused or could cause Intake Direct's prospective clients to not enter into a relationship with Intake Direct, due to their inability to communicate with Intake Direct via email.

50. Defendant Johnson's actions have caused Plaintiff to expend countless employee man-hours in restoring a functional domain (although under a domain name not familiar to the public).

51. Defendant Johnson's actions have harmed Intake Direct financially in excess of $75,000, in an amount to be determined at trial.

## COUNT III

### Declaratory Judgment Regarding the Membership of Intake Direct LLC

52. Intake Direct re-alleges and incorporates by reference all allegations contained in paragraphs 1 through 51 as if fully alleged herein.

53. This Count seeks a declaratory judgment pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201.

54. Intake Direct shows that there is an actual controversy between the parties growing out of the foregoing facts and circumstances, to wit, Intake Direct asserts that

Defendant Johnson is not a member of Intake Direct LLC and Defendant Johnson asserts that he is a member of Intake Direct LLC.

55. Intake Direct shows that the membership of Intake Direct, as alleged above, is made up of Cason Carter, Daniel Eichholz, and Damon Barr; that Defendant Johnson played no role in operating or managing the business of Intake Direct; that Defendant Johnson's initial capital contribution was converted to a loan to Intake Direct upon his decision to not be a member of Intake Direct; that Defendant Johnson never received any distribution from Intake Direct, nor did he ever claim to be entitled to any distribution from Intake Direct; that Defendant Johnson was never allocated any income from Intake Direct on Intake Direct's tax returns, nor did he ever report or pay any income taxes derived from the income of Intake Direct; and that Defendant Johnson played no role in the development of Intake Direct's new hire training packets, protocols, scripts and procedures.

56. Intake Direct shows that this controversy creates substantial and unsustainable uncertainty and instability on the part of Intake Direct with respect to its rights, status, duties, obligations, and legal relations to Defendant Johnson.

57. Intake Direct shows that it has no adequate remedy at law or otherwise except by a declaration regarding its rights, status, duties, obligations, and legal relations to Defendant Johnson.

58. Intake Direct shows that it is entitled to a declaration that Defendant Johnson is not a member of Intake Direct LLC.

## COUNT IV

## Attorneys' Fees and Expenses of Litigation

59. Intake Direct re-alleges and incorporates by reference all allegations contained in paragraphs 1 through 58 as if fully alleged herein.

60. Defendant Johnson severed the intakedirect.com domain resulting in the loss of the Intake Direct website and the loss of functionality of Intake Direct's email domain, which has damaged Intake Direct, and Intake Direct has demanded that Defendant Johnson restore Intake Direct's website and email domain, which Defendant Johnson initially refused.

61. By refusing to restore Intake Direct's website and email domain immediately upon demand, Defendant Johnson has acted in bad faith, has been stubbornly litigious, and has caused Intake Direct unnecessary trouble and expense in recovering what is rightfully Intake Direct's, thereby entitling Intake Direct to an award of reasonable attorneys' fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11.

WHEREFORE, Plaintiff Intake Direct respectfully requests:

(a) That summons and process issue and be served upon Defendant as provided by law;

(b) For a judgment in favor of Plaintiff and against Defendant;

(c) For a trial by jury on all issues triable by right of jury;

(d) For the Court to declare that Defendant is not a member of Intake Direct LLC;

(e) That Plaintiff recover from Defendant all amounts due for damages incurred by Plaintiff as a result of Defendant's tortious interference with Plaintiff's business relations;

(f) That Plaintiff recover its reasonable attorneys' fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11;

(g) That the Court issue preliminary and permanent injunctions prohibiting Defendant from severing, turning off, terminating or otherwise interfering with Plaintiff's website and email domain; and

(h) Such other and further relief as the Court deems just and proper.

This 29th day of June, 2021.

                                        OLIVER MANER LLP

                                        /s/ Benjamin M. Perkins
                                        BENJAMIN M. PERKINS
                                        Georgia Bar No. 140997
                                        BRIAN D. GRIFFIN
                                        Georgia Bar No. 874951

P.O. Box 10186                         *Attorneys for Plaintiff Intake Direct*
Savannah, GA 31412
(912) 236-3311